# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ASPECT SOFTWARE, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>GARY E. BARNETT,<br><br>      Defendant. | CASE NO.: 1:11-cv-10754-DJC<br><br>**FILED UNDER SEAL** |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF (1) MOTION TO ALTER AND/OR AMEND THE MAY 27, 2011 ORDER; and (2) SUPPLEMENTAL FILING REGARDING HIS MOTION TO ALTER AND/OR AMEND**

Marina C. Tsatalis (*Pro Hac Vice*)
Charles T. Graves (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 999-5800
mtsatalis@wsgr.com
tgraves@wsgr.com

Russell Beck (BBO No. 561031)
Stephen B. Reed (BBO No. 561949)
BECK REED RIDEN LLP
99 Summer Street, Suite 1600
Boston, MA 02110
Telephone: (617) 500-8660
Facsimile: (617) 500-8665
rbeck@beckreed.com
sreed@beckreed.com

*Attorneys for Defendant Gary E. Barnett*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. FACTS .................................................................................................................................... 3

III. ARGUMENT .......................................................................................................................... 4

      A. Aspect's Argument About the Legal Standard is Incorrect. .................................. 4

      B. Aspect Has Failed to Identify its Purported Trade Secrets. ................................... 4

      C. Aspect Misstates its Contract With Mr. Barnett. ................................................... 7

      D. Aspect's Argument Regarding the ACE Product is Incorrect. .............................. 7

      E. Aspect's Argument Regarding the Seven Job Functions is Incorrect................... 10

      F. Aspect's Proposed Order Contains Other Unwarranted Restrictions. .................. 13

      G. Aspect's Effort to Insert a Prior Restraint Should be Rejected. ........................... 14

      H. In the Alternative, Mr. Barnett Requests a Chance to Respond in Detail.. .......... 15

IV. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F. 3d 1407 (11th Cir. 1998) ................................................................................................................................. 6

*American Science & Eng'g, Inc. v. Kelly*, 69 F. Supp. 2d 227 (D. Mass. 1999) ........................ 6 5

*Corning Inc. v. Picvue Elec., Ltd.*, 365 F.3d 156 (2nd Cir. 2004) ................................................ 6

*CVD, Inc. v. Raytheon Co.*, 1981 WL 2162 (D. Mass Dec. 3, 1981) ........................................... 6

*In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986) .................................................... 15

*MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993) ....................................... 6

*Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412 (7th Cir. 2008) ...................... 6

*Portfolioscope, Inc. v. I-Flex Solutions Ltd.*, 472 F. Supp. 2d 252 (D. Mass. 2007) .................. 10

*Roton Barrier, Inc. v. The Stanley Works*, 79 F.3d 1112 (Fed. Cir. 1996) .................................. 6

*Sutra, Inc. v. Iceland Express, EHF*, 2008 WL 2705580 (D. Mass July 10, 2008) ..................... 5

### Rules

Fed. R. Civ. Proc. 65(d) ..................................................................................................... 2, 6, 14

Fed. R. Evid. 602 ........................................................................................................................ 8

Fed. R. Evid. 703 ........................................................................................................................ 8

**I.     INTRODUCTION**

On June 21, 2011 – and with an updated list of job roles submitted on July 20, 2011 – Defendant Gary Barnett moved the Court to clarify the May 27, 2011 Order so that he can perform certain job responsibilities during the pendency of his contract with Aspect.

Plaintiff Aspect on first glance appears to largely agree to Mr. Barnett's new roles. Indeed, Aspect states that it does not oppose Mr. Barnett's ███████████████ ████████████████████████████████. Aspect's disagreement appears to center on just one Avaya product, called ACE (Agile Communication Environment).

Appearances, however, are deceiving. Based on broad and unsubstantiated assertions about future trade secret theft, Aspect seeks to bar Mr. Barnett from performing a number of potential ████████████████████████████████████ even where those functions would be limited to Avaya products that Aspect does not make or sell. In addition, Aspect tries to slip language into its Proposed Order that would prevent Mr. Barnett from working with Avaya's customers regarding those products, just because the same company might also buy different, unrelated products from Aspect. Aspect's position is therefore overbroad and unreasonable.

- **Failure to Identify Trade Secret Claims**:  First, in each place where Aspect opposes Mr. Barnett's job role, Aspect contends that trade secrets are at risk of "inadvertent" future disclosure without actually identifying a single trade secret for the Court's analysis. Despite months of waiting, Aspect also has failed to provide a meaningful response to Mr. Barnett's interrogatory seeking a precise identification of the alleged trade secrets that Aspect claims are at risk by Mr. Barnett's Avaya employment.

This alone is a basis to reject all of Aspect's arguments: where Aspect's arguments have become increasingly attenuated, and where Aspect contends that Mr. Barnett's work on

unrelated products will somehow cause him to uncontrollably break the law, the Court should follow relevant case law under FRCP 65(d) and reject Aspect's attempt to block Mr. Barnett's employment based on *unidentified* trade secret claims. A party can only cry wolf so many times without providing any substantiation for its claims before it loses credibility.

● **The ACE Product**: Aspect opposes Mr. Barnett's planned ▇▇▇▇▇▇▇▇ for Avaya's ACE product, but fails to provide a convincing story to back up its speculation about future trade secret misuse. Aspect contends that Avaya's ACE is a "direct competitor," but identifies no competing product. Aspect claims that Avaya's ACE is primarily a Contact Center Product, but provides no detail for that incorrect statement. Aspect claims that because Mr. Barnett worked on so-called "CTI" technology in the 1990s, and because Avaya and Aspect products both have CTI features, he will inevitably steal unidentified trade secrets. But CTI is a well-known general concept used in products like the iPhone, and Aspect's conclusory assertions are insufficient to back up its attacks on Mr. Barnett.

● **Potential Job Responsibilities**: In describing his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In a series of conclusory assertions without evidentiary support, Aspect contends that Mr. Barnett can have no such responsibilities. This is absurd, and goes far beyond the limits of the parties' contract. The Court should reject Aspect's conclusory assertions that Mr. Barnett would uncontrollably misuse Aspect unspecified trade secrets if his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ touches on generic business issues such as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

● **New Prohibitions Aspect Not Previously Sought**: Without calling attention to the tactic, Aspect seeks to insert new terms into its Proposed Order that are harsher than those in the May 27, 2011 Order, and that have nothing to do with Mr. Barnett's request for

clarification. Each of these, including a restriction on customer communications, should be summarily rejected.

To address the problems with Aspect's Proposed Order, Mr. Barnett here submits a new Proposed Order, and respectfully requests that the Court grant his motion and enter his Proposed Order. In the alternative, Mr. Barnett requests that his impending motion to compel a precise identification of Aspect's trade secret claims be granted, so that he can have an opportunity to respond in more detail to show that Aspect's new arguments are unsubstantiated.

## II. FACTS

It is important to map the present state of the parties' agreements and disagreements regarding Mr. Barnett's contemplated job roles. Since about mid-June, Mr. Barnett has been performing a job role with respect to Avaya's desk-top telephones, a project that is nearly over. Aspect filed a cursory motion on June 28, 2011 to bar Mr. Barnett from working for Avaya in any capacity before this motion is resolved, but never expressly or specifically opposed the role regarding desk-top telephones. This issue thus is moot. Separately, Mr. Barnett no longer plans to perform the job role described in his June 21, 2011 motion ▬▬▬▬▬▬▬▬▬▬▬▬

Mr. Barnett now looks forward to a ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ – not including, of course, Contact Center products. As Mr. Barnett described in his July 20, 2011 supplemental filing and a July 24, 2011 email to Aspect, his job would involve ▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

As Mr. Barnett also noted on July 24, 2011, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ overseeing corporate acquisition strategy; ▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬ refining the product life cycle; ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████████████████████████████████ *See*
Opposition, Exhibit B (Mr. Barnett's July 24 email; "he will have responsibility in those roles only to the extent those roles are co-extensive with ███████████████████████

In its response, Aspect opposes outright Mr. Barnett's ████████████████
████████████████████  In addition, Aspect opposes Mr. Barnett's potential role in all of the general business areas listed in (1)-(7) above.  Pending the Court's ruling, Mr. Barnett may begin work in some of the uncontested areas, while complying with the May 27, 2011 Order.

## III. ARGUMENT

### A. Aspect's Argument About the Legal Standard is Incorrect.

Mr. Barnett brought his motion under Rules 52(b), 59(e), and 60(b), and cited a host of cases under those rules in which courts have clarified the scope of injunctions in order to avoid "unwitting contempt." *See* Motion, June 21, at 9-10.  Aspect contends that Mr. Barnett cannot seek such clarification without a showing of undue hardship, and contends that Mr. Barnett faces no such hardship.  *See* Opposition at 4-5.  Aspect ignores Mr. Barnett's multitude of authorities.  Moreover, the off-topic cases on which Aspect relies are not about clarifying the scope of an injunction in order to illuminate its boundaries (as Mr. Barnett seeks here), but instead are about lifting an express prohibition set forth in an injunction on personal hardship grounds.  That is a different question.  Mr. Barnett's authorities make clear that avoiding "unwitting contempt" is sufficient grounds to clarify the scope of an injunction, and that is ample basis for the type of relief Mr. Barnett seeks here.

### B. Aspect Has Failed to Identify its Purported Trade Secrets.

Aspect's opposition is striking for the disconnect between the serious accusations it makes – that Mr. Barnett will uncontrollably steal trade secrets in job roles concerning products that Aspect does not make or sell – and the absence of any detail or supporting evidence to

back up those assertions. Simply put, Aspect nowhere identifies the actual trade secrets that it trumpets throughout its brief, and its discovery responses improperly recite only general categories in which the alleged trade secrets are said to reside. *See* Opposition at 3, 5-10.

Instead, Aspect makes conclusory, opaque accusations that do not specifically identify any items of intellectual property – *i.e.*, "Having Aspect as a reference point for such ▮▮▮▮ provides a clear and unequivocal competitive advantage to Avaya, as does Barnett's knowledge concerning Aspect's proprietary and confidential ▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See id*. at 9. In this example, does Aspect mean to allege that it has a secret means of putting together a revenue forecast that nobody else knows about? If so, what is it, and why exactly would Mr. Barnett be unable to stop himself from misusing it?

This total absence of detail is insufficient as a matter of law, especially where Aspect strains credibility by claiming to own broad, all-encompassing trade secrets regarding products it does not make or sell. Courts nationwide require that plaintiffs specifically identify their alleged secrets so that the defendant (and the reviewing court) have fair opportunity to test whether the plaintiff's assertions are true. *See*, *e.g.*, *Sutra, Inc. v. Iceland Express, EHF*, 2008 WL 2705580, *3 (D. Mass July 10, 2008) ("It is hornbook law that 'the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret.'"; "Analysis becomes difficult, however, when a plaintiff is unable or simply refuses to identify its alleged trade secret adequately.") (citation omitted).

For that reason, courts routinely reject requests for injunctive relief where trade secret plaintiffs fail to adequately identify the trade secrets allegedly at issue.[1] Equally important, the courts have made clear that under Rule 65(d), injunctions in trade secret cases must clearly spell out exactly what information is off limits.[2]

Aspect ignores these rules in the hope that the Court will too. Almost four months into this lawsuit, Aspect has made no effort to identify any purported trade secrets. In early June, Mr. Barnett served an interrogatory requesting that Aspect identify, with precision and specificity, each of the alleged trade secrets it claims that Mr. Barnett will uncontrollably misuse. Aspect first objected. Then, in a meet and confer call, Aspect's counsel readily agreed that Aspect would of course have to identify the alleged secrets – but has never done so. After Mr. Barnett's repeated insistence, Aspect provided a high-level list of *general categories* in which it claims trade secrets exist on August 12. In turn, Aspect makes no effort in its opposition brief to identify any alleged trade secrets despite Mr. Barnett's repeated requests that it do so. *See* Opposition, Exhibit B (July 24 email; "if Aspect elects to oppose Mr. Barnett's roles – and we hope it does not, given the non-overlap – it will be necessary that

---

[1] *See*, *e.g.*, *American Science & Eng'g, Inc. v. Kelly*, 69 F. Supp. 2d 227, 238 (D. Mass. 1999) (denying injunction, in part because plaintiff's trade secret claims were vague and nonspecific); *CVD, Inc. v. Raytheon Co.*, 1981 WL 2162, *1 (D. Mass Dec. 3, 1981) (denying preliminary injunction where plaintiff did not identify alleged trade secrets).

[2] *See*, *e.g.*, *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 415 (7th Cir. 2008) (reversing injunction where defendant would be uncertain whether information from FOIA requests was encompassed by order); *Corning Inc. v. Picvue Elec., Ltd.*, 365 F.3d 156, 158 (2nd Cir. 2004) (remanding where order did not specify what information was subject of the injunction); *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F. 3d 1407, 1412 (11th Cir. 1998); (reversing preliminary injunction in part for non-specific prohibitions on using "any other documents that contain trade secrets that are the proprietary property of Plaintiff."); *Roton Barrier, Inc. v. The Stanley Works*, 79 F.3d 1112, 1121-22 (Fed. Cir. 1996) (two post-judgment injunctions rejected for failure to specify exactly what information was barred from use); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522-23 (9th Cir. 1993) (partially reversing permanent injunction where plaintiff's submission did not specifically identify software-based trade secret claims).

Aspect identify its alleged trade secrets with specificity, and do so quickly, so that we can test them against any oppositional asserts Aspect may choose to make."). This failure to provide any supporting detail regarding overblown trade secret accusations is insufficient to oppose Mr. Barnett's motion for clarification.

### C. Aspect Misstates its Contract With Mr. Barnett.

In its haste to engage in far-reaching speculation about unidentified trade secret claims, Aspect also misstates the terms of its agreement with Mr. Barnett. The parties' agreement is not a full-blown non-competition covenant, and instead bars work only where there is a reasonable likelihood of future trade secret misuse.

However the "reasonable likelihood" test is defined, Aspect seeks to apply a different, harsher standard in its opposition. Specifically, Aspect argues that Mr. Barnett must "preclude the possibility of utilizing or disclosing Aspect trade secrets," and that he must do so even for Avaya products that are not competitive with Aspect products. *See* Opposition at 5-6.

Aspect offers no authority for these extreme propositions. It is Aspect's burden to (1) identify the trade secrets at issue; (2) show a likelihood that the alleged secrets are really secret, and not stale or outdated; and (3) show a likelihood that Mr. Barnett, who has done nothing wrong and is already under a Court order, cannot stop himself from misusing Aspect's trade secrets when he performs jobs relating to products that Aspect does not make or sell.

The onus is on Aspect, not Mr. Barnett, to meet that standard. Aspect's high-level arguments are insufficient to further inhibit Mr. Barnett's career choices. Aspect cannot ask the Court to accept conclusory rhetoric in the absence of an evidence-backed presentation.

### D. Aspect's Argument Regarding the ACE Product is Incorrect.

Aspect seeks to restrict Mr. Barnett from serving as the ███████████ for the ACE product. In a convoluted and difficult to understand section of its brief, Aspect argues that (1)

-7-

Avaya's ACE product is "directly competitive" with an unnamed Aspect product; (2) ACE is really a Contact Center product the "vast majority" of the time; (3) Mr. Barnett knows unspecified trade secrets about "CTI" technology dating back to the 1990s and knows about a CTI link in Aspect's Contact Center product; and (4) therefore Mr. Barnett would have an uncontrollable urge to misuse unidentified trade secrets if he were to ▇ the ACE product. *See* Opposition at 6-7.

Aspect's argument is suspicious for the conceptual leaps and gaps in its presentation. Moreover, if ACE were truly a Contact Center product, it would have been pointless for Mr. Barnett to seek permission to ▇ it given the May 27, 2011 Order. The problems with Aspect's argument are as follows:

● **No Competing Product**:  Aspect claims that Avaya's ACE product is "directly competitive" but never names any Aspect product that is offered as a competitor, substitute, or replacement for Avaya's ACE, and it provides no affidavit to back up this assertion. In fact, there is no such competitive product:  Aspect does not make or sell a product that would substitute for ACE.  Rather, Avaya's ACE competes against products from Microsoft and Cisco.  In fact, Aspect publicly advertises a partnership with Microsoft where Microsoft (not Aspect) supplies customers with a product that competes with Avaya's ACE, making clear that Aspect itself offers no such product.  *See* Affidavit of Gary Barnett, August 15, 2011 ¶ 3.

● **Not a Contact Center Product**:  Aspect implies that Avaya's ACE is a Contact Center product by asserting that "the vast majority" of Avaya's customers use it for Contact Center purposes.  *See* Affidavit of Serge Hyppolite ¶ 6.  To begin with, the Court should disregard Mr. Hyppolite's assertions under FRE 602 and 703, because he is not an expert, fails to state that he has personal knowledge of data or metrics measuring how Avaya or its

-8-

customers use ACE (as opposed to mere knowledge of the product itself), and points to no published studies or other evidence to back up his "vast majority" claim.

In any event, ACE is not a Contact Center Product. It is a "middleware" product whose sole purpose is to allow customers to connect, and make interoperable, different software applications that they use. ACE itself contains no Contact Center functionality, and none of its revenues fall within Avaya's Contact Center revenues. *See* Barnett Reply Affidavit ¶¶ 5-6.

● **Mr. Barnett's Role**: Mr. Barnett's ▓▓▓▓▓ for ACE would have no connection with Contact Center products or applications. ▓▓▓▓▓ As repeatedly stated, he would do nothing that relates to Contact Center products. ▓▓▓▓▓ Aspect has no evidence or basis to argue otherwise. *See id*. ¶¶ 6-7.

● **CTI Functionality is Well-Known**: Aspect argues that because Mr. Barnett worked on so-called "CTI" products in the 1990s and knows about Aspect's CTI link in Aspect's Contact Center product (which is called Unified IP 7.0), this involves trade secrets and somehow would cause Mr. Barnett to unavoidably misuse them in ▓▓▓ Avaya's ACE product. The argument is confusing. Aspect does not identify a connection between ACE and Aspect's Unified IP 7.0 product, and it does not explain why the mere presence of a CTI function in the products (a well-known, generic concept) is a problem. And again, Aspect makes no effort to identify a single alleged trade secret that it claims to be at risk, much less to

-9-

explain how or why Mr. Barnett would inevitably misuse such information in ▮▮▮▮ the ACE product. Mr. Barnett certainly knows of none. *See id.* ¶¶ 7-9.

CTI technology simply refers to a connection between a telephony system and a computer system – something that was once new, but now is so basic that it includes handheld devices like the iPhone and the Blackberry, and basic products like Microsoft Windows. The use of CTI is not synonymous with Contact Center functionality. CTI is a broad term, and its general concepts are nobody's trade secrets – as seen in the Wikipedia page for "Computer Telephony Integration." The fact that a company has a CTI link does not mean that there are trade secrets at risk, or that there is any overlap with the "CTI" functionality offered by another company. It is thus no surprise that Aspect itself stated in a 2009 paper that CTI, "once touted as state-of-the-art," is now "facing retirement," and "has become outdated technology that is actually hindering contact centers from satisfying customers." *See id.* ¶¶ 7-10.

Aspect's reference to Mr. Barnett's CTI work in the 1990s is even more confusing. If Aspect means to contend that Mr. Barnett would steal outdated technology, the accusation not only defies common sense, but fails to recognize that Massachusetts does not allow trade secret claims over information that is no longer in continuous use. *See*, *e.g.*, *Portfolioscope, Inc. v. I-Flex Solutions Ltd.*, 472 F. Supp. 2d 252, 255 (D. Mass. 2007) (rejecting trade secret claim where information was not still in use; "Massachusetts law establishes that a trade secret must be in continuous use.").

With respect to ACE, Aspect has not connected the dots in any convincing manner, and its evidentiary failures should be dispositive.

### E. Aspect's Argument Regarding the Seven Job Functions is Incorrect.

Aspect also opposes Mr. Barnett's General Manager role for the eight products to the extent it involves the generic business areas of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██ overseeing corporate acquisition strategy; ████████████████ refining the product life cycle ████████████████████████████████████████████████████ *See* Opposition at 8-10.

As noted above, Mr. Barnett's ████████████████████████████████ ████████████████████████████████████████████████████

████████ Nonetheless, in extremely broad-brush, conclusory fashion, Aspect contends that if Mr. Barnett has anything to do with these general business areas, he will unavoidably disclose unspecified Aspect trade secrets.  Aspect's two-page argument does not contain a single citation to authority, a single citation to a witness declaration, or any identification of any trade secret claim – just several paragraphs of high-level lawyer rhetoric.

Aspect has no real argument on these points, and instead hopes that hand-waving about future trade secret misuse will carry the day.  The slapdash nature of Aspect's argument is obvious when the reader notes Aspect's inconsistency in *agreeing* that Mr. Barnett may engage in work relating to product life cycles (*see* Proposed Order, section 2), but simultaneously *opposing* Mr. Barnett's work on product life cycles (*see* Opposition at 8).  Aspect's argument on this point is embarrassingly conclusory, and fails to explain why work on product life cycles for unrelated products would lead to an uncontrollable urge to misuse alleged trade secrets.  *See* Opposition at 8 ("For years, Barnett was deeply involved in the development of Aspect's ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Barnett may, intentionally or not, rely on what he knows of Aspect's methods and compromise Aspect's unique approach to ████████████████").  What are the "methods" that are supposedly secret?  What connection would they have, if any, to an Avaya product life cycle?  The reader cannot tell.

Aspect's other arguments fare no better. Whether the issue is the acquisition of other companies, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Aspect simplistically argues that it owns unknown trade secrets that cover these areas and that Mr. Barnett "undoubtedly" will misuse them. *See* Opposition at 8-10. Aspect does not mention or attempt to rebut Mr. Barnett's point-by-point affidavit that describes the non-overlap with Aspect in these areas. *See* Barnett Affidavit, June 21, 2011, ¶¶ 11, 18-24.

Two Aspect arguments prove the deficiency. As to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Aspect hypothesizes that some Avaya customers might also be Aspect customers, and that Mr. Barnett therefore would be uncontrollably compelled to disrupt the customer's other, unrelated business with Aspect. *See* Opposition at 9. But the May 27 Order already prohibits Mr. Barnett from disrupting business between Aspect and its customers. Aspect's hypothetical therefore has no substance. Moreover, Aspect did not rebut Mr. Barnett's statement that he knew of no strategy or details at Aspect ▮▮▮▮▮▮▮▮▮▮▮▮. *See* Barnett Affidavit, June 21, 2011, ¶ 23.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Court should be highly skeptical of such assertions, especially in the total absence of any trade secret identification that would allow a fair assessment of this expansive claim, and given Mr. Barnett's unrebutted statement that he did not know of any Aspect ▮▮▮▮▮▮▮▮ *See* Barnett Affidavit, June 21, 2011, ¶ 20.

There is no case in the country involving "inevitable disclosure" that imposes such draconian restrictions regarding non-competitive work on unrelated products in the absence of wrongdoing – especially without a trade secret identification that would allow Mr. Barnett (and the Court) to test these incredibly attenuated accusations against the facts. Whatever "reasonably likely" to steal trade secrets means under the parties' agreement – a 51% probability of theft, a 66% probability, or some other measure – Aspect has submitted nothing that could block Mr. Barnett from being able to perform his ▮▮▮▮▮▮▮▮▮▮▮▮▮ fully and completely, in these general areas. Mr. Barnett respectfully requests that the Court reject Aspect's unsubstantiated attempt to restrict these activities.

### F.   Aspect's Proposed Order Contains Other Unwarranted Restrictions.

Aspect seeks to place other substantive restrictions on Mr. Barnett through the wording of its Proposed Order. Although Aspect does not mention these restrictions in its brief, they reflect severe restrictions, and pose interpretation problems for Mr. Barnett under Rule 65(d).

● **Restriction on Customer Communication**: First, Aspect seeks to impose a new restriction that would prohibit Mr. Barnett from communicating with any Avaya customer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, if by happenstance that customer also buys other, unrelated products from Aspect. *See* Aspect's Proposed Order ¶ 5. For example, if a multinational customer buys Aspect products for its Denmark office and also buys different Avaya products for its Denver office, Mr. Barnett would be barred from any communications with that customer. Worse, if Mr. Barnett does not know that the company is also an Aspect customer, he could face "unwitting contempt" for unknowingly violating the order.

The May 27 Order contains no such limitation – it simply bars Mr. Barnett from seeking to disrupt customers from doing business with Aspect, from misusing trade secrets, and from engaging in the Contact Center job. *See* May 27 Order at 2. Aspect's contract with Mr.

Barnett likewise contains no such restriction. Aspect wants something new and expansive, something for which it filed no affirmative motion and something for which it did not include any supporting argument in its Opposition Brief.

Aspect and Avaya both sell products to large, multinational companies. A company might buy non-overlapping, non-competitive products from both. Aspect's overreaching proposal would irrationally interfere with Mr. Barnett's unrelated ▆▆▆▆▆▆ of other products by inhibiting his communications with Avaya's customers based solely on the arbitrary question of whether the same customer also buys from Aspect. By contrast, Mr. Barnett's Proposed Order bars communications that relate to Contact Center products, without overbroad restrictions. This is properly tailored and consistent with the May 27 Order.

- **Ambiguous Wording**: Second, Aspect includes vague restrictive language in its Proposed Order that would be difficult to interpret, and thus is impermissible under Rule 65(d). For example, Aspect would have the order recite that "Mr. Barnett's work for Avaya shall be limited in all respects" except for the ▆▆▆▆▆▆▆▆▆▆ What if Mr. Barnett has an opportunity to engage in another, unrelated product in his ▆▆▆▆▆▆ capacity? Would he face "unwitting contempt" for slight changes in his contemplated job role? The better solution, found in Mr. Barnett's Proposed Order, bars Mr. Barnett from Contact Center-related activities. This is a bright line test that conforms to the expectations of Rule 65(d), and allows Mr. Barnett to clearly understand what he cannot do under the Order.

### G.   Aspect's Effort to Insert a Prior Restraint Should be Rejected.

Finally, Aspect also seeks a Court order barring Mr. Barnett from "making any negative statements about Aspect, directly or indirectly, to any Aspect customer, supplier, licensee, licensor or business relation." *See* Aspect's Proposed Order at 2, ¶ 6. The Court should not enter this order, for several reasons. First, Aspect has no cause of action for defamation or

trade libel. Aspect has never filed any motion relating to speech issues – much less an affirmative motion to modify the May 27, 2011 Order on that ground – and the May 27, 2011 Order does not mention any such issue. Aspect makes no argument about (and certainly presents no evidence of) wrongdoing or harm in connection with any speech issues.

Second, Aspect's proposal would create, as written, an unconstitutional prior restraint on lawful speech. *See generally In re Providence Journal Co*., 820 F.2d 1342, 1345 (1st Cir. 1986) (noting that an injunctive order against future speech is a prior restraint). While Mr. Barnett has no reason and no intent to say anything negative about Aspect, Aspect's proposal nonetheless is unlawful. As an example, if a third party read about this lawsuit and asked Mr. Barnett about it, Aspect's proposal would have him in contempt if he responded by stating "I respectfully disagree with Aspect's unsubstantiated claims that I have an uncontrollable urge to misuse unidentified trade secrets."

### H. In the Alternative, Mr. Barnett Requests a Chance to Respond in Detail.

If the Court is in any way inclined to accept Aspect's arguments, Mr. Barnett respectfully requests that his impending motion to compel a precise identification of Aspect's trade secret claims be granted first, so that he can have an opportunity to demonstrate in more detail that Aspect's accusations are exaggerated.

### IV. CONCLUSION

For all of these reasons, Mr. Barnett respectfully requests that his motion be granted.

DATED: August 15, 2011

/S/   Charles T. Graves
Charles T. Graves, (*pro hac vice*)

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on August 15, 2011.

   /s/  Stephen B. Reed