UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ASPECT SOFTWARE, INC.,

Plaintiff,

v.

GARY E. BARNETT

Defendant.

CIVIL ACTION NO. 1:11CV10754-DJC

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S MOTION TO ALTER AND/OR AMEND THE MAY 27 ORDER**

**INTRODUCTION**

Amid the sound and the fury surrounding the Motion to Amend, Barnett attempts to camouflage from this Court the fact that Aspect agreed he could work on seven of the eight products identified, so long as certain restrictions be put in place; restrictions that (i) Barnett agreed to in his employment agreement with Aspect; (ii) Barnett agreed to in various pleadings filed with this Court; or (iii) which are reasonably necessary to protect the legitimate business interests of Aspect. The only product to which Aspect wholly opposes Barnett taking any role is the Avaya ACE product, for the reasons set forth in Aspect's Opposition and this Sur-Reply. Unfortunately, yet predictably, Barnett has taken a confrontational position and mischaracterized Aspect's straightforward position for his own convenience.

Because there exists absolutely no risk of harm to Barnett in the event his job roles are restricted, and because this Court has already decided that Barnett's intimate knowledge of Aspect's many trade secrets poses a substantial likelihood for unauthorized use or disclosure,

inadvertent or otherwise, Barnett's reply memorandum resorts to a slew of hyperbole and ad hominem attacks on Aspect and its counsel which cross the bounds of zealous advocacy and tread into the realm of blatant misrepresentation.[1] The overly aggressive posture assumed by Barnett is intended to villainize Aspect in the eyes of this Court and draw attention away from the fact that he flagrantly breached his employment agreement with Aspect by surreptitiously assuming a Vice Presidency with Avaya and began working in the exact same market in which Aspect and Avaya compete.

**ARGUMENT**

**I. Legal Standard by Which to Assess Barnett's Motion to Amend**

Barnett craftily frames his Motion to Amend in the context of seeking clarification; however, the relief he seeks would in effect constitute full blown modification of the May 27 Order. For the reasons set forth in Aspect's Opposition, if Barnett is granted unfettered access to work with Avaya's ACE product, and is similarly given free reign to perform amorphous [redacted] with respect to the remaining seven products, he will participate in a business in which he would be "reasonably likely to employ, reveal, or otherwise utilize" Aspect trade secrets. For example, Mr. Barnett's knowledge of the types of data that are made available through Aspect's UIP CTI / Web Services products for integration of UIP to CRM and other types of products will reasonably likely be used by him in his [redacted]

[redacted] Such choices of data give

---

[1] By way of example, Barnett states on 5 separate occasions in his reply that Aspect has not produced a list of trade secrets before finally alluding to Aspect's production on p. 6 of his memorandum. In truth, Aspect provided a list of the trade secrets at issue in the affidavits of Mr. Foy and Mr. Ely filed with the Motion for Preliminary Injunction. Furthermore, Aspect's list of trade secrets was produced to Defendant on August 12, 2011 pursuant to the agreement between counsel for the parties. Barnett's reply was not filed until August 15, 2011 – three days after receiving Aspect's list of trade secrets.

Aspect's products a competitive edge over competitors' products because of the usefulness of such data to customers who want the benefits of such integrations. Mr. Barnett's understanding of why Aspect chooses such types of data is based upon trade secrets he acquired at Aspect.

With specific respect to Avaya's ACE product, Barnett readily admits in his own affidavit that this product "is a middleware product that offers Application Programming Interfaces (APIs) to allow for the interconnectivity of other software products that customers use, such as *Avaya's Aura products* and third party software products." Affidavit of Gary E. Barnett in Support of Defendant's Reply Brief, ¶ 5 (emphasis added). [REDACTED] By Avaya's own admission, "Avaya Aura® is the core communications platform supporting *unified communications and contact center solutions* for midsize to large enterprises." See Exhibit A (emphasis added). In light of the above, it is both incredulous and disingenuous that Barnett even tries to argue that his [REDACTED] for ACE would have no connection with Contact Center products or applications." Defendant's Reply Brief, p. 9.[2] In reality, Barnett's proposal seeks permission to work on Contact Center related products, an issue this Court has previously and unequivocally decided in Aspect's favor.

As to the remaining seven products, Aspect's proposed restrictions are entirely reasonable and consistent with this Court's findings in the May 27 Order. Even where the potential for disclosure of trade secrets is minimal, the balancing of harms still cuts in favor of

---

[2] Notably, Barnett acknowledges in his own proposed order that he should not be permitted to work in any capacity with Avaya's contact center products: "In the course of performing his [REDACTED] for these Avaya products, *Mr. Barnett may not assume any responsibility or work that involves Avaya's Contact Center products.*" (emphasis added).

Aspect for the exact same reasons already articulated by this Court. Barnett has not suggested, nor could he, that his employment with Avaya will be jeopardized, or his compensation and benefits package altered, if precluded from certain job roles for the remainder of the 12 month restrictive period. That is to say, there is no risk of harm to Barnett, irreparable or otherwise, if Aspect's proposed restrictions are accepted.

Because the requested relief would amount to *de facto* modification of the Order, Barnett is charged with the burden of persuasion as set forth in Aspect's Opposition. Unable to come remotely close to meeting that burden, Barnett seeks to disguise his request on the pretense of clarification. To be sure, Barnett does not ask for revised language or explanation; rather, he asks this Court to allow performance of job roles that would conflict with the existing language of the May 27 Order and essentially to provide him carte blanche to perform any other duties that he unilaterally decides do not violate the May 27 Order. That is a modification, not a clarification.

## II. The Restrictions in Aspect's Proposed Order are Reasonably Necessary to Protect Aspect's Interests and/or Have Been Previously Agreed to by Barnett

Nowhere in Barnett's reply memorandum does he dispute or contest Aspect's assertion that he has previously agreed to the restrictions contained in Aspect's proposed order. Instead, Barnett insists that the restrictions must be rejected because "[t]he May 27 Order contains no such limitation." Query how Barnett can argue in good faith that Aspect's proposal should be rejected because it departs marginally from the language contained in the May 27 Order, while Barnett himself has filed a Motion to Amend the Order and submitted a proposed order of his own which contains language and provisions outside the scope of the May 27 Order. Barnett takes a similarly incongruous position when interpreting the restrictive covenant in his employment agreement with Aspect. Ignoring for his own convenience the actual language in

the contract, each of Barnett's filings in connection with the Motion to Amend ask this Court to base its ruling on the existence of direct competition between Aspect and Avaya products. While it is true that the existence of competition would necessarily create the risk of utilization or disclosure, the absence of competition does not inherently imply the converse. As explained in Aspect's Opposition, functionality and technology may be easily applied to non-competing products resulting in benefit to Avaya at the direct expense of Aspect.

By way of example, and not limitation, below are selected quotations which demonstrate Barnett's prior agreement with the restrictions currently proposed by Aspect.

- "As with all my proposed job roles, this role *would not involve soliciting Aspect customers* or employees ..." Affidavit of Gary E. Barnett in Support of Defendant's Motion to Alter or Amend the May 27 Order (Docket No. 22-1), ¶ 17;
- "[F]or twelve months from my departure from Aspect, I will not participate in any customer sales situations where, to my or Avaya's knowledge, (a) the customer is a current Aspect customer ..." Affidavit of Gary Barnett in Opposition to Plaintiff's Motion for Preliminary Injunction (Docket No. 6-1), ¶ 38;
- "I have also offered to provide Aspect a periodic declaration – at the end of each month through April 2012 – certifying under oath my non-use and non-disclosure of any non-public Aspect information." Id. at ¶ 39.
- Barnett will refrain from "making any negative statements or communications about [Aspect] or its affiliates." Employment Agreement, § 7(a); and
- "Avaya has agreed that Mr. Barnett may recuse himself or otherwise avoid any discussion where he feels that the subject matter might touch on Aspect, and Avaya will support him in such efforts." Defendant's Memorandum of Law in Opposition to Motion for Preliminary Injunction (Docket No. 6), p. 7.

For Barnett to quarrel over Aspect's proposed restrictions is demonstrative of the disingenuous nature with which he has approached this entire situation.

### III. The Analysis which Guided this Court in its Decision on Aspect's Motion for Preliminary Injunction is Equally Applicable to the Instant Situation and Should be Determinative on Barnett's Motion to Amend

This Court's May 27 Order considered, at great length, both (i) the likelihood that Barnett will utilize or disclose Aspect trade secrets, inadvertently or otherwise, while serving as a high-ranking executive at Avaya and (ii) the balancing of potential harms to each party. The Court ruled in Aspect's favor on both issues. The only change in circumstances since that ruling is that Barnett has proposed new job responsibilities. With respect to balancing the potential harms, the analysis still must cut in favor of Aspect for the same reasons it did on May 27, 2011. In the multitude of pleadings filed since entry of the May 27 Order, Barnett has not once even attempted to articulate any potential harm that would befall him in the event he is required to excuse himself from certain meetings, discussion or projects while working at Avaya. His job will not be placed in jeopardy. His compensation will not be affected. His quality of life will not change in any way. On the flip side, the potential harm to Aspect in the event restrictions are not imposed could be catastrophic. As a company in direct competition with the global powerhouse that is Avaya, any competitive advantage Aspect possesses is invaluable to its business. Even where the risk of Barnett utilizing Aspect's trade secrets is low, the potential harm to Aspect extrapolated from that risk must trump the entirely non-existent risk of harm to Barnett.

## CONCLUSION

For the reasons set forth in Aspect's Opposition and this Sur-Reply, the Court should adopt Aspect's proposed order, including restrictions on Barnett's activities which he has previously agreed to and which are reasonably necessary to protect the legitimate business interests of Aspect.

Respectfully Submitted,
Plaintiff,
ASPECT SOFTWARE, INC.,
By its attorneys,

/s/ Lawrence P. Murray
Lawrence P. Murray, BBO #561835
Michael V. Samarel, BBO #675682
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
617-345-3000

DATED: August 19, 2011

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASPECT SOFTWARE, INC.,<br>Plaintiff,<br>v.<br>GARY E. BARNETT<br>Defendants. | CIVIL ACTION NO. 1:11CV10754 DJC |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 19, 2011.

/s/ Lawrence P. Murray
*Attorney for Plaintiff*