## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| Aspect Software, Inc.,            ) | |
|                                   ) | |
|         Plaintiff,                ) | |
|                                   ) | |
| v.                                ) | Civil Action No. 11-10754-DJC |
|                                   ) | |
| Gary Barnett,                     ) | |
|                                   ) | |
|         Defendant.                ) | |
| _____) | |

### MEMORANDUM AND ORDER

CASPER, J.                                                      September 14, 2011

## I.      Introduction

On May 27, 2011, the Court entered a preliminary injunction and order ("the Preliminary Injunction") in this case.[1]  Currently before the Court is Defendant Barnett's Motion to Amend the Preliminary Injunction.  Barnett asserts that amendment is necessary "so as to allow [Barnett] to avoid 'unwitting contempt.'"  Def. Memo, D. 22 at 12 (quoting Regal Knitwear Co. v. Nat'l. Labor Relations Bd., 324 U.S. 9, 15 (1945)).

## II.     Legal Standard

Barnett brings his motion pursuant to Federal Rules of Civil Procedure 52(b), 59(e) and 60(b)(6).  Barnett asserts that the standards governing motions filed pursuant to these various rules are functionally similar, at least in the context of addressing the risk he fears of so-called "unwitting

_____

[1]The Court has recounted the background of this case elsewhere, see Aspect Software, Inc. v. Barnett, 2011 WL 2116441, at *1-*5 (D. Mass. May 27, 2011); D. 16 (Preliminary Injunction and Order).

contempt."

Pursuant to Rule 52(b), "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings - or make additional findings - and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "A Rule 52(b) motion is meant 'to correct, clarify or amplify the [Court's] findings [and] is not meant to provide an avenue for relitigating issues on which the moving party did not prevail. . . .'" <u>Dash v. Chi. Ins. Co.</u>, 2004 WL 2337021, at *1 (D. Mass. Oct. 18, 2004) (quoting 9 Moore's Federal Practice § 52.60) (second alteration by the <u>Dash</u> court). Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Rule 59(e) motions are granted only where the movant shows a manifest error of law or newly discovered evidence." <u>Kansky v. Coca-Cola Bottling Co. of New Eng.</u>, 492 F.3d 54, 60 (1st Cir. 2007). Finally, under Rule 60(b)(6), "[o]n a motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "[R]elief under Rule 60(b)(6) should be granted only under exceptional circumstances." <u>Rivera v. P.R. Tel. Co.</u>, 921 F.2d 393, 395 (1st Cir. 1990).

Barnett argues that these standards are more relaxed when a party's motion for an amendment is motivated by an intent to avoid "unwitting contempt" and relies upon <u>Regal Knitwear</u> in support of his proposition. Def. Memo, D. 22 at 12. But Barnett has not offered, and the Court cannot find, any examples of a court in the First Circuit discussing either <u>Regal Knitwear</u> or the concept of "unwitting contempt" in conjunction with a motion under Rules 52(b), 59(e), or 60(b), let alone such a court in the Circuit relying on <u>Regal Knitwear</u> to alter the standard under which it

reviews a motion brought under those rules.[2]  In this Court's estimation, the "best" case in this

Circuit for Barnett's position may be <u>Williams v. Lesiak</u>, 822 F.2d 1223 (1st Cir. 1987), where the

First Circuit, reviewing a motion under Rule 60(b), noted that "where [a court] order has proved to

be a faulty method for accomplishing the goal for which it was designed, it would be error for a

district court to refuse to grant a modification." <u>Id.</u> at 1227.  But the <u>Williams</u> court also took pains

to reiterate that where "the danger that motivated the provisions" of a court's order are "still present,

a request for modification or vacation [of the order] faces a very heavy burden," and that "[n]othing

less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead

us to change what was decreed . . . ." <u>Id.</u> (citations and quotations omitted).

Thus, even taking full account of <u>Regal Knitwear</u>, Barnett's burden is steep, regardless of

which specific rule governs his motion:  he may not relitigate issues on which he has failed to

prevail in earlier proceedings before the Court, and he must either 1) persuade the Court that

granting his motion would merely amplify (rather than alter) the intent behind the Preliminary

Injunction, or 2) show that exceptional circumstances, a manifest error of law or newly discovered

---

[2]Perhaps this is not surprising.  Barnett offers an excerpt from <u>Regal Knitwear</u>, Def. Memo, D. 22 at 12 (quoting <u>Regal Knitwear</u>, 324 U.S. at 15), that read in context suggests that the <u>Regal Knitwear</u> court was predicting, nor prescribing, how courts would handle motions to modify:  "If defendants enter upon transactions which raise doubts as to the applicability of the injunction, they may petition the court granting it for a motion for a modification or construction of the order.  While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification . . . ." <u>Regal Knitwear</u>, 324 U.S. at 15.  Additionally, <u>Regal Knitwear</u> did not involve a motion to *modify* an injunction; instead, it involved (among other things) the limitations on a court's power to *enforce* an injunction - specifically, an "injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." <u>Id.</u> at 13.  A full reading of <u>Regal Knitwear</u> suggests that the case may be relevant to, but clearly does not control, the legal standards governing motions under Rules 52(b), 59(e) or 60(b) - and especially not Barnett's instant motion, since Barnett is the Defendant in this case, not a person "whose rights have not been adjudged according to law."

evidence cast doubt on the Preliminary Injunction as it currently stands.

## III.   Discussion

Barnett does not argue that exceptional circumstances, a manifest error of law or newly discovered evidence require altering the Preliminary Injunction.  Instead, Barnett argues that because the Preliminary Injunction prohibits him from "participating in any business in which he would be reasonably likely to employ, reveal or otherwise utilize Trade Secrets used by [Plaintiff] Aspect prior to Barnett's termination," Preliminary Injunction, D. 16 at 2[3], but does not "set forth explicit criteria or boundaries for determining" what kind of work Barnett *can* do, Def. Memo, D. 22 at 13, the Preliminary Injunction should be amended "so that he receives predictability and certainty regarding his role at Avaya, and does not unwittingly face a motion for contempt." Id. at 4.

The Court is familiar with this argument.  Barnett made a nearly identical argument four months ago when he opposed Aspect's Motion for a Preliminary Injunction enforcing Barnett's employment agreement with Aspect, see, e.g., Def. Memo in Opp., D. 6 at 19 (arguing that the language in Section 7 of the Agreement was too vague to be enforceable), 21 (arguing that given the vagueness and ambiguity in the Agreement, the Court should not enforce it against Barnett); Transcript of Motion Hearing, D. 8 at 40-41 (arguing that the "reasonably likely" language in the Preliminary Injunction, mirroring the language in the Agreement, is too vague to provide guidance to Barnett), 44 (discussing enforceability of the Agreement).  This argument was unavailing, at least

---

[3]This language in the Preliminary Injunction was taken nearly verbatim from Barnett's employment agreement with Aspect:  "Employee agrees that . . . he or she will not . . . (iv) Participate in any business in which he would be reasonably likely to employ, reveal, or otherwise utilize Trade Secrets used by the Company prior to the Executive's termination . . . ." Employment Agreement, D. 1-1 at 20 (Section 7 ("Noncompete; Non-Solicitation"), subsection (a)(iv)).

in the preliminary injunction context.  See Aspect Software, Inc. v. Barnett, 2011 WL 2116441, at *7 (D. Mass. May 27, 2011).  To the extent Barnett is dissatisfied with the level of specificity regarding the restrictions on his work, the source of his dissatisfaction in the first instance is the employment agreement he entered into with Aspect, not the Preliminary Injunction.  Barnett is precluded from using Rules 52(e), 59(b) or 60(b) to relitigate whether that agreement can be effectively enforced as a preliminary injunction.  Dash, 2004 WL 2337021, at *1.

Additionally, Barnett's fear of "unwitting contempt" should be at least somewhat allayed by the procedural posture of this case.  Aspect has not moved for an order of contempt.  Were it to do so, it would have the burden of "establish[ing] by clear and convincing evidence that the putative contemnor violated the relevant court order," Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77 (1st Cir. 2002), a determination that is committed to the Court's discretion, see Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 15-16 (1st Cir. 1991) (stating that "[t]he trial court's ultimate finding on contempt is reviewed for abuse of discretion"), and will be made in regard to a concrete, non-hypothetical, set of facts.  See Regal Knitwear, 324 U.S. at 15-16 ("No concrete case is before us. We have here an abstract controversy over the use of these words, and it is as sterile as abstract controversies usually are. . . . The Board is not here attempting to reach or to hold anyone in contempt by virtue of [the court] orders [at issue]. . . . No one can be punished for contempt because of these words [in the order] until after a judicial hearing, in which their operation could be determined on a concrete set of facts").

5

## VI.  Conclusion

For the reason set forth above, Barnett's Motion to Amend the Preliminary Injunction is

DENIED.[4]

**So ordered.**

/s/ Denise J. Casper

United States District Judge

---

[4]Earlier in this litigation, Aspect had filed a multi-part motion that sought:  1) an extension in the briefing schedule on the instant motion, 2) a request for *in camera* review of certain documents, and 3) for a Court order requiring Barnett to cease his employment with Avaya pending the resolution of Barnett's motion to modify the preliminary injunction.  D. 27. The Court has already resolved the scheduling issue, see D. Entry for 7/21/11, and resolved the issue regarding review of documents without resorting to *in camera* review.  See D. Entries for 7/5/11 and 7/15/11.  Aspect has not pressed the third part of its motion, and in light of this order denying Barnett's motion to amend, the remainder of Aspect's multi-part motion, D. 27, is now DISMISSED AS MOOT.